## Staunton.

### RATLIFF v. VANDIKES.

September 15th, 1892.

1. SPECIFIC PERFORMANCE—*Fraud—Evidence.*—Where defendant was applied to by plaintiff's agent to sell timber, and refused to sell it without the land, and H, who accompanied agent, represented himself as agent of persons known to defendant as responsible, and that he would buy the land for them if he would sell the timber to plaintiff, defendant was unable to read or write, but executed the contract on the representations of H and plaintiff's agent that he was selling both land and timber, but in fact the contract contained no provision for sale of the land:

HELD:

No specific performance of the sale of the timber should be decreed, because of the fraudulent procurement of the contract.

2. WITNESSES—*Husband—Competency.*—Where wife has no separate interest in the result of the suit, though made a party, her husband is a competent witness in his own behalf.

Argued at Wytheville. Decided at Staunton. Appeal from decree of circuit court of Buchanan county, rendered October 28th, 1891, in a suit in equity wherein J. W. Ratliff and N. B. Dotson, partners doing business in the name of Ratliff & Dotson, were plaintiffs, and Charles Vandikes and Araminta, his wife, were defendants. The decree being adverse to the plaintiffs, they obtained an appeal to this court. Opinion states the case.

*S. S. Dinwiddie* and *Blair & Blair*, for appellants.

*Henry & Graham*, for appellees.

LEWIS, P., delivered the opinion of the court.

This was a suit for the specific performance of a contract entered into by the appellee, Charles Vandikes, with the appellants, Ratliff & Dotson, through their agent, J. J. Childress, for the sale of certain standing timber. The appellants here were the complainants below. The contract was for the sale of " all the good, sound, growing poplar, cucumber, and ash trees," of certain dimensions, on the appellee's land, to be paid for when measured.

The principal defense was that the contract was obtained by fraud. The answer states that on the day the contract was entered into Childress and one Hibbitts went to the respondent's house, in Buchanan county, and proposed to buy his timber ; that the respondent replied to their proposition, as he had told them before, that he would not sell his timber without the land ; that Hibbitts thereupon remarked that he could " fix that " ; that he was the agent of Stuart and Watts to buy land, and that he would take the land if respondent would sell the timber thereon to Childress for the appellants ; that the price for each was then agreed upon ; that respondent, being an illiterate man, unable to read or write, confided in and relied upon Childress and Hibbitts to draw up the contract according to the understanding of the parties—*i. e.*, with a provision that there was to be no sale of the timber without the land—and that after the contract had been written they both assured him it was all right, and that he, believing that it was, signed it, or rather affixed his mark to it.

The contract, however, as written, contains no such provision ; and the answer further states that respondent soon afterwards became convinced that Childress and Hibbitts had combined and colluded together to practice a fraud upon him ; that Hibbitts was not authorized to buy land for Stuart and Watts, and that he fraudulently represented that he was to induce respondent to sell his timber.

The bill makes no mention of the contract for the sale of

the land, but seeks specific performance of the contract for the timber as though it were unconnected with any other transaction.

The circuit court, after depositions had been taken, dismissed the bill by the decree complained of, and in this decree there is no error to the prejudice of the appellants. It is impossible to read the record and come to any other conclusion than that the charge of fraud in the answer is established by the evidence.

As a witness in his own behalf, the appellee testified substantially to the same state of facts set out in the answer. He denied, moreover, that while the parties were in treaty for the timber Childress said to him that if he signed the contract for the timber, it was to have nothing to do with the contract for the land ; and he added that both Childress and Hibbitts, who were present together, assured him that the latter was buying the land for Stuart and Watts.

In point of fact, he was not, nor was any attempt made to prove that he was, the agent of anybody, and the proof is that, but for the representation of his agency, the timber would not have been sold.

It is true he denies making such representation, or that he professed tò be acting as agent at all. He says he was acting for himself, and that he so informed the appellee at the time. He admits, however, that Childress remarked to the appellee in his presence that *he expected* he (Hibbitts) was buying for Stuart, and he does not pretend that he corrected or denied the statement ; and Childress, who also testified for the appellants, states distinctly that he told the appellee he was satisfied Hibbitts was buying the land for Stuart. "They then went to talking about it," he says, "and agreed on the price."

The same witness also testified that the day before the contract was made Hibbitts suggested to him the idea of buying the appellee's timber, saying he was authorized to buy coal

lands, and proposed to him to go with him to buy the appellee's timber and land. The witness, however, seems to have been distrustful of his good faith in the matter, for he says : " Thinking *it might be a put-up job to get Vandikes' timber*, I said to him I would not go over there and make a false impression"; to which he replied, "I mean what I say." So the next day they went. The witness then narrates what occurred after they arrived at the appellee's house, as follows : " When we told our business, Mr. Vandikes said he would sell his timber and land, but not the timber without the land. I told him I only wanted the timber, and that if he and Hibbitts could trade for the land without the timber, I. would take the timber; *that I was satisfied Hibbitts was buying land for Henry Stuart. They then went to talking about it.*"

Another witness, A. B. Ratliff, who testified for the appellee, says he heard a conversation between Childress and Hibbitts at Dr. Waldren's house a few days after the date of the contract, in which " the boys made a laugh of it, and Hibbitts said Vandikes had fixed them a good dinner, but he never expected to eat another with him."

These facts are very significant. Why was the business made a subject of laughter ? And why was it that Hibbitts never expected to take another dinner with the appellee ? Obviously, because he knew the latter had been the victim of a cunningly-devised fraud—that is, that he had been induced to sell his timber by the artful representation that he (Hibbitts) was buying the land for a responsible purchaser, which representation he knew was false.

The discrepancy in the evidence as to the person or persons for whom Hibbitts was represented to be acting is an immaterial matter. His own statement that he declared he was acting for himself is disproven, and whether he was represented to be acting for Stuart and Watts, as the appellee testifies, or for Stuart alone, as Childress in effect testifies, makes

no difference, for, however that may be, the fact is the appellee was led to believe he was making a real sale of the land to a *bona fide* agent of a responsible principal, and by that means the contract for the timber was obtained. Hibbitts admits that he himself was not responsible, and that he told the appellee he was buying on speculation, and that his ability to pay for the land depended on his ability to sell it. The appellee, however, denies that such a remark was made, and, if made, it was not only not heard by Childress, who was present during the negotiation, but was in conflict with Hibbitts' own previous statement to him, already mentioned.

It is clear, therefore, apart from any other consideration that has been urged in support of the decree, that the contract for the sale of the timber is not only not one that ought to be specifically enforced, but that it is absolutely void on the ground of fraud. In other words, the contract for the timber and that for the sale of the land are virtually parts of the same transaction, and the fraud which infects the latter also infects the former, and vitiates it.

It need only be added that the appellants' objection that the appellee was not a competent witness in the case, which is for the first time made in this court, is without merit; for although his wife, in the progress of the cause, was made a defendant to the suit, it does not appear that she is interested in the result. The record, indeed, shows that soon after the date of the contract in question, the appellee conveyed to her a tract of land in Buchanan county, which the bill states is the tract upon which the timber in controversy is standing; but there is no proof in support of this allegation, and in the absence of such proof, the appellee must be held to have been a competent witness. The wife, however, was not. But excluding her deposition, which the lower court admitted, the result is the same; for we have not considered it.

DECREE AFFIRMED.